IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| MARIE JANOSKI | : CIVIL ACTION |
|---|---|
| v. | : |
| | : NO. 16-984 |
| ALLEGHENY INTERMEDIATE UNIT | : |

## ORDER-MEMORANDUM

**AND NOW,** this 16th day of November 2016, upon consideration of Defendant's Motion to Dismiss (ECF Doc. No. 18), Plaintiff's Opposition (ECF Doc. No. 22), and for reasons below, it is **ORDERED** Defendant's Motion (ECF Doc. No. 18) is **DENIED.** Defendant shall answer the Complaint no later than **November 28, 2016.**

### *Analysis*

Allegheny Intermediate Unit ("AIU") hired Marie Janoski to provide specialized education services to public school children in Allegheny County.[1] On June 30, 2014, AIU reported a $1.1 million dollar deficit in the specialized education program.[2] Allegheny County news outlets, including the Pittsburgh Post-Gazette, reported AIU's $1.1 million dollar deficit.[3]

On January 23, 2015, AIU told its occupational therapists, including Ms. Janoski, it would terminate their existing contracts on January 31, 2015.[4] AIU gave the occupational

---

[1] ECF Doc. No. 16 ¶¶ 6-7, 9.

[2] *Id.* ¶ 14.

[3] *Id.* ¶ 15.

[4] *Id.* ¶ 16.

therapists a new contract altering the terms of her employment by: (1) changing her compensation from a fixed salary to an hourly employee; (2) terminating her AIU-provided health benefits on July 1, 2015; (3) terminating a policy to pay for administrative and preparation time; and, (4) terminating its policy to pay for her internet data plan.[5]

On February 8, 2015, the Pittsburgh Post-Gazette reported on AIU's deficit and detailed AIU's travel expenses, conference expenses, and retreat expenses for AIU's administrators and pay raises for high level employees during the deficit period.[6] In late February or early March, Ms. Janoski described her new AIU employment contract and its impact on occupational therapists and the students who receive specialized educational services to a Pittsburgh Post-Gazette reporter[7] On March 2, 2015, the Pittsburgh Post-Gazette published an article referencing Ms. Janoski and "several therapists who spoke recently with the Pittsburgh Post-Gazette but did not want their names public for fear of retribution."[8]

The Pittsburgh Post-Gazette quotes Ms. Janoski regarding the elimination of employer-paid data plans and employer paid administrative time.[9] The article references Ms. Janoski discussing hourly payments resulting in a loss of pay during weather-related and holiday school closings and limits on occupational therapists' hours could stop students from completing their

---

[5] *Id.* ¶ 19.

[6] *Id.* ¶ 22.

[7] *Id.* ¶ 23.

[8] ECF Doc. No. 16-2.

[9] ECF Doc. No. 16 ¶ 25.

2

therapy plans.[10] The Pittsburgh Post-Gazette directly quoted Ms. Janoski: "the therapists are committed to providing students with the highest standard of care…we can only provide that quality of care if we are supported."[11]

Ms. Janoski sent a letter to the editor of the Pittsburgh Post-Gazette regarding the March 2, 2015 article using the analogy "your student's English teacher, the teacher would get paid per each lesson he or she taught. Plus, each student would have a cap placed on the amount of time that the teacher could spend on the student….[a]s licensed professionals dedicated to serving those most in need of our expertise….[w]e request that the AIU re-examine its priorities.[12] On March 7, 2015, the Pittsburgh Post-Gazette published Ms. Janoski's letter.[13]

In May 2015, Ms. Janoski's supervisor Holly McElhinny held a performance evaluation meeting with Ms. Janoski.[14] Ms. McElhinny told Ms. Janoski her Pittsburgh Post-Gazette comments and letter to the editor made AIU look bad.[15] AIU stated in Ms. Janoski's performance evaluation she "had been informed about the AIU policy of communicating with outside media without prior approval."[16] Ms. McElhinny gave her a lower performance

---

[10] *Id.*

[11] *Id.* ¶ 26.

[12] ECF Doc. No. 16-3.

[13] ECF Doc. No. 16 ¶ 27.

[14] *Id.* ¶ 31.

[15] *Id.* ¶ 34.

[16] *Id.* ¶ 36.

3

evaluation in "maintaining integrity and professionalism," "contributing toward department and team goals," and "demonstrates a positive attitude toward work."[17]

Near the end of May 2015, Ms. McElhinny held an end-of-year meeting with Ms. Janoski. Ms. McElhinny repeated Ms. Janoski's Pittsburgh Post-Gazette comments and letter to the editor made AIU look bad.[18] Ms. Janoski apologized if anything she said to the reporter or wrote in her letter insulted AIU.[19]

On July 21, 2015, AIU informed Ms. Janoski her contract with AIU would not be renewed for the 2015-2016 school year.[20] Ms. Janoski sued AIU under § 1983 for violating her First Amendment rights. AIU moved to dismiss Ms. Janoski's claim arguing she fails to plead: her termination arises from a municipal policy so there is no liability for AIU; and, a § 1983 free speech violation because her speech is not on a matter of public concern.[21]

---

[17] *Id.* ¶ 35.

[18] *Id.* ¶ 39.

[19] *Id.* ¶ 39.

[20] *Id.* ¶ 40.

[21] In considering AIU's motion to dismiss, we review Ms. Janoski's allegations as true and draw all reasonable inferences in her favor. We deny AIU's motion to dismiss if Ms. Janoski's "factual allegations must be enough to raise a right of relief above the speculative level." *See Spence v. Brownsville Area School Dist.*, No. 08-626, 2008 WL 2779079 at *2 (W.D.Pa. July 15, 2008)(*quoting Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008)).

4

### A. Ms. Janoski states a claim for municipal liability.

Ms. Janoski alleges AIU did not renew her contract based on "the AIU policy of communicating with outside media without prior approval" which violated her First Amendment rights.[22]

Ms. Janoski does not sue her supervisors individually; she only states a claim against AIU as a municipality. In *Monell v. Dept. of Social Services of City of New* York, the Supreme Court held § 1983 claims could be brought directly against a municipality where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers."[23]

To state a claim against AIU for First Amendment retaliation under *Monell*, Ms. Janoski must first allege the "existence of an unconstitutional municipal policy."[24] Then Ms. Janoski must allege the AIU's policy is the "moving force" behind AIU's violation of her First Amendment rights.[25] Ms. Janoski "does not need to identify a specific policy or custom at this juncture. But [she] must give adequate notice to the municipality for the basis of [her] claim, or 'some specificity as to the custom, policy, or procedure which caused [her] injuries as opposed to a generic and unspecified reference to a custom, policy, or procedure.'"[26]

---

[22] ECF Doc. No. 16 ¶ 36, 44-45.

[23] *Monell v. Dept. of Social Services of City of New York*, 436 U.S. 658, 690 (1978).

[24] *See City of St. Louis v. Praprotnik*, 485 U.S. 112, 128 (1988).

[25] *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 107 (3d Cir. 2002)(internal citations omitted).

[26] *Davila v. Northern Regional Joint Police Bd.*, 979 F. Supp. 2d 612, 634 (W.D.Pa. 2013) *opinion vacated in part on reconsideration on unrelated issues by* No. 13-70, 2014 WL 3735631 (W.D.Pa. July 28, 2014) (*citing Phillips*, 515 F.3d at 232 and *Carter v. City of Phila.*, 181 F.3d 339, 357–58 (3d Cir.1999)).

Ms. Janoski alleges AIU did not renew her contract based on AIU's policy requiring all employees have prior approval before speaking to outside media which violated her First Amendment Right to free speech.

Ms. Janoski alleges facts to support the existence of an AIU policy and the policy is the motivating factor in AIU's action. In her May 2015 performance evaluation, AIU stated Ms. Janoski "had been informed about the AIU policy of communicating with outside media without prior approval."[27] Ms. Janoski alleges AIU never informed her of AIU's media policy until her May 2015 performance evaluation meeting.[28] AIU completed Ms. Janoski's performance evaluation two months after Ms. Janoski's public statements. During the performance evaluation meeting, her supervisor stated Ms. Janoski's public statements made AIU look bad.[29]

In late May, her AIU supervisor referenced her public statements again in Ms. Janoski's end-of-year meeting.[30] Four months after Ms. Janoski's public statements and two months after being informed about media policy and the negative effect of her public statements, AIU refused to renew Ms. Janoski's contract for the 2015-2016 school year.[31]

Ms. Janoski's co-workers' reluctance to speak on the record suggests AIU discourages employees from speaking publically. We note the Pittsburgh Post-Gazette article quoting Ms.

---

[27] ECF Doc. No. 16 ¶ 36.

[28] ECF Doc. No. 16 ¶ 37.

[29] *Id.* ¶ 34.

[30] *Id.* ¶ 39.

[31] *Id.* ¶ 40.

6

Janoski, also referenced "several therapists who spoke recently with the Pittsburgh Post-Gazette but did not want their names public for fear of retribution."[32]

We find Ms. Janoski states a claim for municipal liability under *Monell* because she alleges AIU's media policy is the "moving force" behind AIU violating her First Amendment rights.[33]

### B. Ms. Janoski states a claim for § 1983 free speech violation.

To state a First Amendment retaliation claim, Ms. Janoski must allege her speech is protected by the First Amendment and the protected speech is a "substantial or motivating factor" in AIU's decision to not renew her contract.[34] Ms. Janoski must then allege, as a public employee, her speech is protected because she spoke as a private citizen on a matter of public concern.[35]

#### 1. Ms. Janoski alleges a causal nexus.

Ms. Janoski alleges AIU did not renew her contract because of her public statements in March 2015. In the same article quoting Ms. Janoski, the Pittsburgh Post-Gazette reporter states "several therapists who spoke recently with the Pittsburgh Post-Gazette but did not want their names public for fear of retribution."[36]

---

[32] ECF Doc. No. 16-2.

[33] *Id.* ¶ 48; *see Grayson*, 293 F3d at 107.

[34] *Flora v. County of Luzerne*, 776 F.3d 169, 174 (3d Cir. 2015).

[35] *See Flora*, 776 F.3d at 174.

[36] ECF Doc. No. 16-2.

7

Two months after Ms. Janoski's public statements, she alleges her supervisor stated Ms. Janoski's public statements made the AIU look bad during her performance evaluation.[37] Ms. Janoski alleges AIU stated in her performance evaluation she "had been informed about the AIU policy of communicating with outside media without prior approval."[38] Later in May, her AIU supervisor referenced her public statements again in Ms. Janoski's end-of-year meeting.[39] On July 15, 2015, AIU refused to renew Ms. Janoski's contract for the 2015-2016 school year.[40]

Ms. Janoski alleges a causal nexus because her contract is not renewed four months after her public statements and two months after being informed twice by her supervisor her public statements made AIU look bad. This nexus is supported by Ms. Janoski's allegation she is the only AIU therapist to speak out publicly and we note she suffered the retribution her fellow therapists feared when they elected to speak off the record only.[41]

### 2. Ms. Janoski states a claim her speech is protected.

A public employee's speech is protected when "(1) in making it, the employee spoke as a citizen, (2) the statement involved a matter of public concern; and, (3) the government employer did not have 'an adequate justification for treating the employee differently from any other member of the general public' as a result of the statement he made."[42]

---

[37] *Id.* ¶ 34.

[38] ECF Doc. No. 16 ¶ 36.

[39] *Id.* ¶ 39.

[40] *Id.* ¶ 40.

[41] *Id.* ¶ 42.

[42] *Flora*, 776 F.3d at 174 (*quoting Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006) and *Hill v. Borough of Kutztown*, 455 F.3d 225, 241-42 (3d Cir. 2006)).

8

To determine if Ms. Janoski made her speech as a citizen, the "controlling factor" is whether Ms. Janoski made them under her AIU duties.[43] Ms. Janoski is an occupational therapist in specialized education for Allegheny County public schools. AIU argues Ms. Janoski's speech is as an employee because her knowledge comes from being an employee and the subject matter of her speech only relates to her employment. The Supreme Court and our Court of Appeals recently reaffirmed speech by public employees "holds special value *precisely because* those employees gain knowledge of matters of public concern through their employment."[44] Ms. Janoski sufficiently alleges she made her public statements as a citizen because her employment duties did not involve speaking on AIU's behalf.

For speech to involve a matter of public concern, Ms. Janoski must allege her public statements "can be fairly considered as relating to any matter of political, social or other concern to the community."[45] A public employee's speech can be a matter of public concern when "it is the subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public."[46]

Ms. Janoski alleges the Allegheny County news already reported on AIU's deficit and spending, including an article in the Pittsburgh Post-Gazette on February 8, 2015.[47] Ms. Janoski

---

[43] *Id.* at 177.

[44] *Dougherty v. School Dist. Of Philadelphia*, 772 F.3d 979, 989 (3d Cir. 2014)(*citing Lane v. Franks*, __U.S.__, 134 S.Ct. 2369, 2379 (2014)).

[45] *Munroe v. Central Bucks School Dist.*, 805 F.3d 454, 467 (3d Cir. 2015)(*citing Connick v. Myers*, 461 U.S. 138, 146 (1983)).

[46] *Id.* at 467 (internal citations omitted).

[47] ECF Doc. No. 16 ¶ 22.

9

alleges her comments were on a matter of public concern because they concerned "the efficient and effective provision of special education services to students served by the AIU."[48] In the Pittsburgh Post-Gazette article and Ms. Janoski's letter to the editor, she expresses concern the new employment structure will cause substandard care to the public school students they service.[49] Ms. Janoski alleges sufficient facts her speech is a matter of public concern because her statements concern AIU's deficit and spending which "is the subject of legitimate news interest" and the quality of special education services to public students which is "of value and concern to the public."[50]

Ms. Janoski pleads AIU violated § 1983 requiring we deny AIU's motion to dismiss.

*[signature]*

KEARNEY, J.

---

[48] *Id.* ¶ 49.

[49] *Id.* ¶ 26; ECF Doc. No. 16-3.

[50] *Munroe*, 805 F.3d at 467.